IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3117-FL

| | | |
|---|---|---|
| JESSE M. TOPPIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| J. KORNEGAY, JOHNNY HAWKINS, CAPTAIN DARNELL, SERGEANT DRUMGO, SERGEANT COPLEY, SERGEANT KEY, CORRECTIONAL OFFICER CARROLL, CORRECTIONAL OFFICER HARRISON, CORRECTIONAL OFFICER KING, MR. BOISVERT, and ALVIN KELLER, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, and it is before the court on the respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Captain Darnell ("Darnell"), Mr. Boisvert ("Boisvert"), Correctional Officer Carroll ("Carroll"), Sergeant Drumgo ("Drumgo"), Johnny Hawkins ("Hawkins"), Alvin Keller ("Keller"), Sergeant Key ("Key") and J. Kornegay ("Kornegay") (DE 20), as well as Correctional Officer Harrison ("Harrison") and Correctional Officer King ("King") (DE 29). Plaintiff did not respond to either motion. In this posture, the issues raised are ripe for adjudication.

**BACKGROUND**

The incident at issue arose on April 13, 2011, while plaintiff, a state inmate, was incarcerated at Warren Correctional Institution ("Warren"). Compl. p. 7. On this date, defendants Drumgo, Harrison, Key, and Carroll executed a search of plaintiff's cell. Id. Specifically, Key and Carroll

detained plaintiff outside of his cell in "receiving" while Drumgo and Harrison searched plaintiff's "religious prayer box." Id. "During the search of [plaintiff's] room, some of [his] religious items were confiscated resulting in the los[s] of [his] personal religious items (property) and they have never been returned, therefore could not be desecrated properly as required by [his] religious beliefs." Id. The specific items plaintiff claims were confiscated include: (1) three ounces of gray sage; (2) four ounces of herbal Kinninick; (3) three ounces of white cedar; and (4) one sweet grass braid. Id. p. 9.

Subsequent to the search, plaintiff was charged with a disciplinary offense for possession of an unauthorized communication device because a black Samsung cell phone and battery pack were recovered from plaintiff's sacred items box in the course of the search. Id. Attach. 1, p. 7. On April 20, 2011, plaintiff plead guilty to the charged disciplinary offense and received forty-five (45) days in segregation, forty (40) hours extra duty, and lost twenty (20) days of good-time credit.

On May 31, 2012, plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his rights pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiff also alleges that defendants violated North Carolina Department of Public Safety ("DPS") policy. Finally, plaintiff alleges that defendants' repeatedly failed to process his grievances in retaliation for plaintiff's attempt to vindicate his First, Fourth, and Fourteenth Amendment rights. As relief, plaintiff seeks compensatory, punitive, exemplary, and nominal damages for violations of his constitutional rights and loss of his religious property. Plaintiff additionally seeks declaratory and injunctive relief.

2

Case 5:12-ct-03117-FL   Document 36   Filed 02/21/14   Page 2 of 10

Defendants subsequently filed motions to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted. Although plaintiff was notified of defendants' motions to dismiss, he failed to respond.

**DISCUSSION**

A. Motion to Dismiss

    1. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

3

2. Analysis

    a. Fourth Amendment

Plaintiff asserts that the search of his cell constituted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. However, an inmate does not have a legitimate expectation of privacy in his prison cell, and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984). Thus, plaintiff fails to state a constitutional claim.

    b. Due Process

Plaintiff complains that his due process rights were violated because Durango and Harrison confiscated certain religious items from his cell which were not returned. To state a procedural or substantive due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action. <u>Beverati v. Smith</u>, 120 F.3d 500, 502 (4th Cir. 1997).

In this case, plaintiff alleges a procedural due process claim based upon the alleged deprivation of his religious property. However, even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." <u>Hudson</u>, 468 U.S. at 533; <u>see</u> <u>Mora v. City of Gaithersburg</u>, 519 F.3d 216, 230-31 (4th Cir. 2008). Here an adequate post-deprivation remedy is available to plaintiff in state court. <u>See e.g.</u>, <u>Wilkins v. Whitaker</u>, 714 F.2d 4, 6-7 (4th Cir. 1983). Because plaintiff has an adequate post-deprivation remedy in state court, his procedural due process claim fails.

As for substantive due process, the Fourth Circuit defines it as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those

4

actions." Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal, Virginia, 135 F.3d 275, 287-88 (4th Cir. 1998) (quotation omitted). The substantive due process check "is warranted only where no process could cure the deficiencies in the governmental action . . . In other words, governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Id. In this case, the court does not find the alleged deprivation so unjust as to be incapable of avoidance by any procedural protections. Moreover, post-deprivation state remedies are available to plaintiff. Thus, plaintiff has not alleged a substantive due process violation. Based upon the foregoing, plaintiff has not alleged an unconstitutional deprivation of property, and fails to state a due process claim.

      c.      Policy Challenge

Plaintiff alleges that his due process rights were violated because the search of his religious property violated DPS policy. However, the mere violation of a prison regulation does not automatically rise to the level of a constitutional violation cognizable under § 1983. Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (stating that prison regulations are primarily designed to guide correctional officials in the administration of a prison and not designed to confer rights on inmates); Williams v. Benjamin, 77 F.3d 756, 766 n.5 (4th Cir. 1996) (finding that even if the guards were found to have violated the prison's four-point-restraint policy, the plaintiff would not automatically prevail on his Eighth Amendment claim). Thus, plaintiff fails to state a constitutional claim.

      d.      First Amendment

Plaintiff alleges that defendants Key, Carroll, Drumgo and Harrison participated in a search of plaintiff's cell which involved the handling of plaintiff's sacred items box outside of his presence which violated the tenants of his Native American religion. Defendants Drumgo, Harrison, Key,

5

and Carroll argue that this claim is barred pursuant to the United States Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), which states that where success in a plaintiff's § 1983 damage action would implicitly question the validity of an inmate's conviction or the duration of an inmate's sentence, the plaintiff must plausibly allege that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486–87. "A district court must undertake a case specific analysis to determine whether success on the claims would necessarily imply the invalidity of a conviction or sentence." Thigpen v. McDonnell, 273 F. App'x 271, 272 (4th Cir. 2008) (per curiam).

In the case at hand, plaintiff's disciplinary conviction relates to the confiscation of a Samsung telephone and battery pack , but does not involve the alleged First Amendment violation for handling plaintiff's religious items. Further, there is no indication that success on the instant claim would imply the invalidity of plaintiff's disciplinary conviction for possession of the telephone and battery pack. Thus, plaintiff's claim is not Heck barred.

Alternatively, defendants Drumgo, Harrison, Key, and Carroll argue that plaintiff fails to state a First Amendment violation because the search of plaintiff's sacred items box and seizure of certain of plaintiff's sacred items was reasonably related to the legitimate penological interest of institutional safety and security. The Free Exercise clause of the First Amendment, made applicable to the states through the Fourteenth Amendment to the United States Constitution, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. 1; Goodall by Goodall v. Stafford County School Bd., 60 F.3d 168, 170 (4th Cir.1995). To state a § 1983 claim based upon an inmate's First Amendment right to the free exercise of his religion, the

6

inmate must prove that he held a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened his exercise of that belief. See Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

The burden lies with the plaintiff to establish that the regulation or action at issue is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir.1993), cert. denied, 510 U.S. 1049 (1994). In deciding whether a defendants' actions can be sustained as "reasonably related to legitimate penological interests," the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90.

Upon examining the Turner factors, the court finds that there is a valid rational connection between the search of plaintiff's religious items box and the legitimate penological interest of prison security. See Florence v. Board of Chosen Freeholders of County of Burlington, __U.S.__, 132 S.Ct. 1510, 1519 (2012) ("Cell phones are used to orchestrate violence and criminality both within and without jailhouse walls.") (citing Today and Tomorrow 237 (J. Pollock ed. 1997)); Delgado v. Wilson, No. 3:11CV165, 2011 WL 6750768, at *1 (E.D. Va. Dec. 23, 2011) (stating that a cell phone is disruptive to the orderly running and security of a correctional facility and may be used "to

7

facilitate escape, contraband introductions and potential harm to the community through unfettered access to the public through an unmonitored communications contact . . ."); see also Eason v. Owen, No. 3:09-2611-JFA-JRM, 2010 WL 3192932, at *3 (D.S.C. Apr. 30, 2010) ("Possession of a cell phone can undermine institutional security because the inmate can avoid the telephone monitoring requirement facilitating the introduction of contraband, such as drugs, into the institution."); Lolley v. Louisiana Correctional Services, No. 09-00555-CG-B, 2011 WL 4499331, at * 6 (S.D. Ala. Sept. 9, 2011).

Further, courts must "accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006); see, Florence, 132 S.Ct. at 1517 (indicating that establishing security policies at a jail or prison is something "peculiarly within the province and professional expertise of corrections officials" and that "courts should ordinarily defer to their expert judgment in such matters."); Cook v. Lehman, 863 F. Supp. 207, 212 (E.D. Pa.1994) (even if a prison official's conduct affects protected First Amendment rights, courts should defer to the official's decisions which are aimed at protecting internal security and order, so long as they are "reasonably related to legitimate penological interests") (citing Thornburgh v. Abbott, 490 U.S. 401, 413 (1989)).

Turning to the remaining factors of the Turner test, the court finds that although there may have been alternative methods of searching plaintiff's sacred items box, plaintiff likewise, had alternative means of exercising his First Amendment rights in that he could have kept his sacred items box free of contraband. Having considered the Turner factors, the court finds that the isolated search at issue was reasonably related to the penological interest of security. Based upon the

foregoing, the court finds that plaintiff's First Amendment challenge to the search of his sacred items box fails.

      e.      Retaliation

Plaintiff alleges that defendants Darnell, Kornegay, Key, and Boisvert interfered with his access to the courts in violation of the First Amendment to the United States Constitution because they interfered with his attempts to exhaust his administrative remedies. However, inmates generally do not have a constitutional right of access to a grievance process. Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). Moreover, plaintiff's alleged lack of access to the prison's grievance process did not prevent him from fully complying with the administrative remedy process for this claim or litigating this action. Rather, the court has allowed plaintiff to proceed with his First Amendment claim, and has imposed no adverse action as a result of any failure to exhaust administrative remedies. Thus, the court finds that defendants did not violate plaintiff's First Amendment rights.

      f.      Supervisor Liability

Defendants Keller, Kornegay, and Hawkins, all supervisory officials, contend that plaintiff's action should be dismissed because plaintiff failed to state a claim based upon supervisory liability. A supervisory official may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable in § 1983 suits. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). To the extent plaintiff alleges a claim pursuant to supervisor liability, the United States Supreme Court recently addressed the theory of supervisor liability in the context of a § 1983 action. Iqbal, 556 U.S. at 677. In Iqbal, the Court held: "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

9

through the official's own individual actions, has violated the constitution." Id. at 676. Mere knowledge is not sufficient to establish personal participation. Id.

Plaintiff failed to allege that Keller, Kornegay, and Hawkins had any personal involvement in the alleged First Amendment violation. Thus, the court finds that plaintiff failed to state a supervisor liability claim against supervisory defendants Keller, Kornegay, and Hawkins.

B.     Initial Review of Plaintiff's Claim against Copley

The court's docket reflects that plaintiff failed to obtain service upon defendant Sergeant Copley ("Copley") because Copley refused to accept his certified mail. Plaintiff's claim against Copley arises out of Copley's alleged interference with plaintiff's administrative remedy procedure. As the court has DISMISSED this claim against the moving defendants, the court finds it appropriate to also DISMISS this claim as to Copley pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Based upon the foregoing, the court DISMISSES without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) plaintiff's claim against Copley. Additionally, the respective motions to dismiss (DE 20, 29) are GRANTED.

SO ORDERED, this the 21st day of February, 2014.

LOUISE W. FLANAGAN
United States District Judge